# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOYCE GASKINS       *
      *
v.       *      **Civil Case No. WDQ-13-1470**
      *
COMMISSIONER, SOCIAL SECURITY       *
      *
      *************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 15, 17. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Gaskins's motion be denied.

Ms. Gaskins applied for Supplemental Security Income on July 29, 2010, originally alleging a disability onset date of February 15, 2009.[1] (Tr. 122-25). Her claim was denied initially on December 28, 2010, and on reconsideration on April 21, 2011. (Tr. 57-60, 64-65). An Administrative Law Judge ("ALJ") held a hearing on May 24, 2012, (Tr. 25-46), and subsequently denied benefits to Ms. Gaskins in a written opinion, (Tr. 8-24). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

---

[1] She subsequently amended her onset date to August 14, 2010. (Tr. 136-37).

The ALJ found that Ms. Gaskins suffered from the severe impairments of "bipolar disorder; etoh abuse; and history of drug abuse." (Tr. 13). However, the ALJ determined that Ms. Gaskins retained the residual functional capacity ("RFC") to

> perform medium work as defined in 20 CFR 416.967(c) except Claimant is limited to simple, routine, repetitive work with no contact with crowds and very rare/significantly less than occasional contact with public.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Gaskins could perform work existing in significant numbers in the national economy, and that she was not therefore disabled. (Tr. 19-20).

Ms. Gaskins disagrees. She asserts several arguments in support of her appeal: (1) that the ALJ's mental RFC assessment lacked sufficient specificity; (2) that the ALJ assigned insufficient weight to the opinion of her treating psychiatrist, Dr. Javaid; (3) that the ALJ failed to account for moderate limitations found by the state agency physician, Dr. Breslin; (4) that the ALJ's hypothetical to the VE was inadequate; (5) that the Commissioner failed to consider new and material evidence from Drs. DeBlosi and Woreta; and (6) that the ALJ failed to consider adequately the effect of her other impairments such as hypertension, polyneuropathy, obesity, and joint pain. Each argument lacks merit.

Ms. Gaskins's first argument relates to the specificity of her mental RFC assessment. Pl. Mot. 19-21. The RFC assessment specifies that Ms. Gaskins is limited to "simple, routine, repetitive work" (which addresses her limitations in concentration, persistence, and pace) and to "work with no contact with crowds and very rare/significantly less than occasional contact with public" (which addresses her limitations in social functioning). (Tr. 16). Although Ms. Gaskins clearly believes that additional limitations were warranted, I find no inherent deficiency in the wording of the RFC assessment as stated by the ALJ.[2] Moreover, as discussed in more detail

---

[2] Ms. Gaskins argues that SSR 96-8p requires the mental RFC assessment contain detail addressing the

below, I find the RFC assessment itself to be supported by substantial evidence, and therefore recommend that it be affirmed.

Next, Ms. Gaskins argues that the ALJ erred by assigning too little weight to the opinions of her treating psychiatrist, Dr. M. H. Javaid.[3] Pl. Mot. 21-22, 28-33. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). As the ALJ noted, Dr. Javaid's form indicated "marked restrictions" in all areas, including "activities of daily living." (Tr. 18). The ALJ correctly points out that the evidence of record reflects that Ms. Gaskins is highly independent in her activities of daily living, and cares for her minor son. *Id.* Moreover, the ALJ also notes that the treatment notes from Bon Secours reflect that Ms. Gaskins's conditions are relatively well-controlled when she is compliant with her medications. *See, e.g.,* (Tr. 228, 288, 343, 345). The ALJ appropriately considered that discrepancy between

---

claimant's ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. Pl. Mot. 19-20. In fact, SSR 96-8p lists those activities in a non-exhaustive list of examples of mental activities "generally" required in competitive work settings. SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

[3] Although Ms. Gaskins refers to Dr. Javaid as a "treating psychiatrist," and many of the signatures are somewhat unclear, none of the treatment notes from Bon Secours appear to have been signed by Dr. Javaid. Moreover, even Dr. Javaid's "opinion" is filled out almost entirely in handwriting that is not at all consistent with Dr. Javaid's, and the form says "Dr. Sue" at the top. (Tr. 371). "Dr. Sue" appears to refer to Susan Ouellette, who is a CRNP and not a medical doctor. Ms. Ouellette's signature appears on several treatment notes for Ms. Gaskins. *See, e.g.,* (Tr. 289, 293).

the treatment notes and Dr. Javaid's opinions. *See Forsyth v. Astrue*, No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with other physicians' and his own treatment records); *Cramer v. Astrue*, No. 9:10–1872–SB–BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the Plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Finally, the ALJ cited the opinions of the two State Agency psychological consultants, Drs. D. Peterson and Francis Breslin, who reviewed the treatment notes from Bon Secours. (Tr. 251-67, 303-15). Each of those doctors found only mild or moderate restriction in activities of daily living; moderate difficulties in social functioning and in concentration, persistence, or pace; and the residual functional capacity to perform work. *Id.* In light of the substantial evidence of record that is inconsistent with Dr. Javaid's opinion, the ALJ's assignment of little weight to that opinion is justified.

Next, Ms. Gaskins argues that the ALJ failed to properly evaluate her mental impairment. Pl. Mot. 22-25. Specifically, she contends that the ALJ disregarded Dr. Francis Breslin's perceived limitations regarding her mental status. Ms. Gaskins is correct that Dr. Breslin, in Section I of his opinion, checked the box indicating that Ms. Gaskins was "moderately limited" in eleven different areas, (Tr. 317-18). However, the relevant portion of a physician's opinion is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment), *available at* https://

4

secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations. *See, e.g., Andrews v. Astrue*, Civil No. SKG–09–3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so."). Moreover, the ALJ adequately addressed the limitations found in Dr. Breslin's Section III functional capacity assessment. The ALJ limited Ms. Gaskins to "simple, routine, repetitive work with no contact with crowds and very rare/significantly less than occasional contact with public," (Tr. 16), which is consistent with Dr. Breslin's Section III conclusions that Ms. Gaskins "can understand, remember, and follow simple 1-2 step instructions," "can work an 8-hour day using all customary breaks and rest periods," and "[t]here should be no intensive interaction with the public and only casual contact with peers." (Tr. 319).

Ms. Gaskins further argues that the ALJ's hypothetical to the VE did not include all of the necessary mental health limitations. Pl. Mot. 25-27. The ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986)). Essentially, Ms. Gaskins posits that the hypothetical, which was premised on the RFC assessment, was deficient because the RFC assessment was deficient. As discussed above, the ALJ provided substantial evidence to support the restrictions included in the RFC assessment. Accordingly, the hypothetical was sufficient.

Next, Ms. Gaskins contends that the Appeals Council should have assigned significant

weight to two "new and material" opinions: (1) the opinion of Dr. DeBlasi from the Bon Secours Baltimore Health System, (Tr. 381-83) and (2) the physical RFC assessment from Ms. Gaskins's treating physician, Dr. Ambachew Woreta, (Tr. 374-76). Neither opinion was submitted to the ALJ, but both opinions pertain to the period prior to the ALJ's opinion. The Appeals Council considered both opinions, but did not articulate any factual findings regarding those opinions in determining that the opinions did not justify remand. (Tr. 1-4). Under *Meyer v. Astrue,* 662 F.3d 700, 705-06 (4th Cir. 2011), the Appeals Council need not articulate its findings as long as the Court can assess, from a review of the entire record, the basis for the Commissioner's decision.

Although Ms. Gaskins contends that the two physicians' opinions should be treated as "new and material evidence," the opinion from Dr. DeBlasi does not qualify as "new." Evidence is "new" only if "it is not duplicative or cumulative." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Dr. DeBlasi's opinion is extremely similar to the opinion issued by Dr. Javaid, who also works at the Bon Secours Baltimore Health System. *Compare* (Tr. 380) (opinion signed by Dr. DeBlasi but captioned "Dr. Sue") *with* (Tr. 371-73) (opinion signed by Dr. Javaid but also captioned "Dr. Sue"). In fact, the two opinions repeat the same language nearly verbatim and appear to be in the same handwriting. As noted above, the treating records from Bon Secours are almost all signed by non-physicians, and there is no indication that Dr. DeBlasi had any more contact with Ms. Gaskins than Dr. Javaid had during her Bon Secours appointments. Moreover, the ALJ's analysis of Dr. Javaid's report is equally applicable to Dr. DeBlasi's. Because the two reports can only be described as duplicative and cumulative, Dr. DeBlasi's report does not constitute new evidence.

Although Dr. Woreta's report qualifies as "new," new evidence is only "material" where there is "a reasonable possibility that the new evidence would have changed the outcome." *Meyer v. Astrue,* 662 F.3d at 705 (citing *Wilkins,* 953 F.2d at 96). Dr. Woreta premises her

conclusion of disability on allegations of disabling joint pain that simply is not reflected in Ms. Gaskins's medical records. The records show that Ms. Gaskins had only three appointments with Dr. Woreta over nineteen months (despite recommendations that she be seen much more frequently). At those appointments, Ms. Gaskins demonstrated "no localized joint swelling," normal gait and stance, normal sensation, and normal motor function. (Tr. 326-27, 330, 333). The only contrary finding, which was not explained, was "abnormal movement of all extremities," and that finding was made also during a 2010 visit in which Ms. Gaskins made no complaints of joint pain and was not diagnosed with any joint-related impairments. (Tr. 326, 330). Moreover, the opinion by Dr. Woreta is contrary to the thorough consultative examination performed by Dr. Cohen, on which the ALJ relied. *See* (Tr. 272) (finding range of motion "essentially normal"). Although Ms. Gaskins posits that Dr. Cohen was only asked to evaluate her for a broken leg and mental health impairments, it is clear that Dr. Cohen's assessment included a full physical examination. *See* (Tr. 270-72) (Dr. Cohen report finding "specific range of motion of all joints including the spine is normal", "shows ambulation to be normal," "no evidence of inflammatory arthritis," "no restriction in range of motion of the spine or major joints," and "there is no joint abnormality."). In light of the substantial evidence supporting the ALJ's conclusion, and the inconsistency with Dr. Woreta's own treatment notes, there is no reasonable possibility that Dr. Woreta's report would have altered the ALJ's determination.

Finally, Ms. Gaskins argues that the ALJ failed to consider the severity of her hypertension, polyneuropathy, obesity, and joint pain at Step Two of the sequential evaluation. Pl. Mot. 36-38. An impairment is considered "severe" if it significantly limits the claimant's ability to work. See 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that her impairment is severe. *Johnson v. Astrue*, No. PWG–10–3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Ms. Gaskins asserts

that the ALJ's determination that she is capable of only medium (and not heavy or very heavy) work implies that the ALJ must have credited some severe physical impairments. Pl. Mot. 36. Even if Ms. Gaskins were actually capable of higher levels of exertion, the ALJ's restriction to medium work would be harmless error, because she would be able to perform medium work in addition to work requiring greater exertion. Moreover, Ms. Gaskins's only support for her physical impairments is the opinion from Dr. Woreta which, as discussed above, was unavailable to the ALJ. On the record presented to the ALJ, there is no evidence to support any severe physical impairments, as the ALJ concluded during the Step Two analysis in finding that her physical "examination results have been within normal limits." (Tr. 13). Moreover, even if I were to find that the ALJ erred in her evaluation of any of Ms. Gaskins's physical impairments at Step Two, such error would be harmless. Because Ms. Gaskins made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and nonsevere, that significantly impacted Ms. Gaskins's ability to work. *See* 20 C.F.R. § 404.1523. The ALJ considered Ms. Gaskins's physical condition, particularly the assessments of the State Agency physicians and the consultative examination report from Dr. Cohen, in her RFC analysis before concluding that Ms. Gaskins was capable of medium work. (Tr. 18).

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 17); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 15) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated:  March 12, 2014                                      _____/s/_____

Stephanie A. Gallagher
United States Magistrate Judge